**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PATRICIA M. GOUBEAUX, :

          Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
          Defendant. :

Case No. 3:09-cv-183

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on September 2, 2005, alleging disability since June 10, 2005, due to mental retardation. (Tr. 54-56; 82). Plaintiff's application was denied initially and on reconsideration. (Tr. 37-39; 41-43). Administrative Law Judge Amelia Lombardo held a hearing, (Tr. 425-500), following which she determined that Plaintiff is not disabled. (Tr. 17-32). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that she is not disabled, Judge Lombardo found that Plaintiff has

severe mental retardation, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 19, ¶ 3; Tr. 20, ¶ 4). Judge Lombardo also found that Plaintiff has the residual functional capacity to perform work at any level of exertion which is simple repetitive work that involves concentrating only up to two hours and only minimal contact with the public and which does not involve assembly line production quotas. (Tr. 23, ¶ 5). Judge Lombardo then found that Plaintiff is capable of performing her past relevant work as a dishwasher. (Tr. 27, ¶ 6). Judge Lombardo also found that using section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 28, ¶ 10). Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 29).

The transcript contains a copy of Plaintiff's school records which reveal that Plaintiff was in special education throughout her years in school. (Tr. 66; 140-53). Those records also reveal that when Plaintiff was in the fifth grade, testing revealed that Plaintiff had a performance IQ of 54, a verbal IQ of 76, and a full scale IQ of 62. *Id.*

Examining psychologist Dr. Olson reported on September 20, 2005, that Plaintiff graduated from high school in special education classes, that her speech was somewhat reduced in terms of volume or amount, and that she seemed to have difficulty hearing and/or comprehending questions that were asked. (Tr. 183-87). Dr. Olson also reported that Plaintiff's affect was blunted to labile, her mood seemed somewhat depressed, she displayed a number of overt autonomic signs of anxiety, and that she stated she worries sometimes about finding a job because "jobs are hard to find right now." *Id.* Dr. Olsen noted that Plaintiff seemed, at times, slightly tangential, was alert and oriented, had fair concentration and attentional skills, and that her insight and judgment seemed

4

to be impaired possibly as a result of her reduced intellectual functioning. *Id.* Dr. Olsen identified Plaintiff's diagnosis as mild mental retardation and he assigned her a GAF of 52. *Id.* Dr. Olsen opined that Plaintiff 's abilities to relate to others, to understand, remember and follow instructions, and to maintain attention, concentration, persistence, and pace were moderately impaired and her ability to withstand the stress and pressures associated with day-to-day work activity was mildly to moderately impaired. *Id.*

The transcript contains Plaintiff's records from the Montgomery County Board of Mental Retardation and Developmental Disabilities dated January 30, 2006, through January 19, 2007. (Tr. 350-405). Those records contain the report of evaluating psychologist Dr. Ott who noted that Plaintiff's performance IQ was 63, her verbal IQ was 66, and her full scale IQ was 62, and that she was in the mild range of mental retardation. *Id.* Those records reveal that Plaintiff qualified for services from that agency. *Id.* The agency's records also reveal that Plaintiff lived with her mother until her mother was admitted to a nursing home at which time she lived by herself, that she maintained in her home with her family providing oversight, and that with respect to maintaining community employment, she required repetitious training and assistance. *Id.* The records reveal further that Plaintiff had worked for many years in the restaurant industry, that she learned her job through repetition, was capable of working independently once trained, and that she would require assistance seeking a job and receiving the needed training to become independent. *Id.*

Plaintiff participated in a vocational evaluation at ProWork in February, 2007. (Tr. 154-63). The vocational evaluator reported that Plaintiff performed below average in total motor, fine motor, and gross motor skills, that a barrier to Plaintiff's employment was her difficulty with meeting competitive work standards, and that she could perform work similar to her previous

5

employment, but that at least some initial support would be necessary. *Id.*

In July, 2008, a vocational rehabilitation counselor with the State of Ohio Rehabilitation Services reported that test results indicate that Plaintiff was performing in the range of mild mental retardation, that her skills were directly related to ongoing monitoring and family expectations, and that without support and monitoring, it was doubtful that Plaintiff could maintain the level of personal care that she currently exhibited. (Tr. 165-66). That counselor also reported that Plaintiff needed ongoing cueing and verbal prompts to perform basic tasks, would not be able to learn a task independently; even after ongoing performance of a task she would require prompts and monitoring; and that she would not be able to learn her job duties without the assistance of a job coach. *Id.* The counselor noted that Plaintiff had significant deficits in all of her motor skills, was not able to meet production standards on a competitive level, her ability to comprehend information was limited to two and three step directions, she would not be safe in her home, community, and workplace without assistance, and that the jobs she had maintained for many years were actually "carved" for her. *Id.* The counselor also noted that Plaintiff was able to stay in the family home only because her sisters provide her with ongoing monitoring, that she did not spend the weekend alone, and that if she did not have the support of her sisters she would not be able to function independently. *Id.*

Examining psychologist Dr. Halmi reported on July 10, 2008, that Plaintiff did not manifest any odd behavior, her speech was articulate, her affect was flat, her face was expressionless, she did not manifest any motor signs of anxiety, and that her mental content was normal. (Tr. 406-17). Dr. Halmi also reported that Plaintiff was alert and oriented, maintained adequate attention and concentration, her performance on tasks requiring attention and concentration

6

were variable, and that she showed some insight, but would have difficulty making reasonable decisions. *Id.* Dr. Halmi identified Plaintiff's diagnosis as mild mental retardation and he assigned her a GAF of 45. *Id.* Dr. Halmi opined that there was evidence of marked impairment in Plaintiff's activities of daily living, but that he could not opine that her social functioning or ability to maintain concentration to complete a simple repetitive job was markedly impaired given that she had worked consistently in the past at a simple job and nothing had substantially changed with regard to her abilities or symptomatology. *Id.*

In addition to her mental impairment, Plaintiff has a history of gastrointestinal problems. The record contains the office notes of treating gastroenterologist Dr. Beck dated July, 1988, through October 13, 2005. (Tr. 199-239). Those records reveal that Plaintiff first sought treatment from Dr. Beck for complaints of nausea, diarrhea, and abdominal pain. *Id.* Dr. Beck treated Plaintiff with medication and indicated that her symptoms were "suggestive of" irritable bowel syndrome. *Id.*

Beginning in about 1996, Plaintiff has a history of recurrent cysts and/or abscesses throughout her body including her sacrum, left axillary, pelvis, and buttocks. (Tr. 174; 261-63; 268; 270-71; 273; 276-77; 280; 311; 319; 321; 329). Plaintiff's cysts and abscesses were generally treated with incision and drainage procedures and antibiotics. *Id.*

The VE testified at the hearing that, based on the residual functional capacity which Judge Lombardo determined Plaintiff had, that Plaintiff is capable of performing her past relevant work as a dishwasher as well as thousands of other jobs in the economy. (Tr. 491-98). The VE also testified that sheltered work environments are provided by agencies such as Goodwill and the Bureau of Vocational Rehabilitation and that those agencies provide job coaches or case managers

7

who go to the client's work site on a regular basis, and at least once a month, to be sure that problems can be worked out and resolved. *Id.* Apparently based on the testimony provided by Plaintiff's family members, (*see,* Tr. 467-90), the VE testified that until Plaintiff's mother was placed in a nursing home, she functioned as a job coach for Plaintiff. (Tr. 491-98). The VE testified further that all of the jobs which she had identified would require, *inter alia,* the individual to perform independently and did not involve over-the-shoulder supervision or having a co-worker work with the individual. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that she satisfies Listing 12.05C. (Doc. 7). Plaintiff also alleges that the Commissioner erred by finding that she is capable of performing jobs in the economy because the VE determined that she required on-site intervention and a placement specialist in obtaining/maintaining work. *Id.*

This case turns on vocational issues. Specifically, the question is whether Plaintiff is able to maintain employment in the competitive work environment.

The regulations provide in part:

> **§ 404.1512 Evidence**
> ...
> (b) *What we mean by "evidence".* Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. This includes but is not limited to:
> ...
>    (3) Statements you or others make about your impairment(s), your restrictions, your daily activities, [and] your efforts to work... .
> ...

20 C.F.R. § 404.1512; *see also,* 20 C.F.R. § 404.1513.

Social Security Ruling 06-03p reads in part:

> ...
> Although the factors in 20 CFR 404.1527(d) and 416.927(d)

> explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.
> ...

S.S.R. 06-03p, 2006 WL 2329939 (S.S.A.).

In this case, there are several opinions from individuals who evaluated Plaintiff's vocational capabilities. Specifically, the record contains the reports from Pro Work, and the State of Ohio Rehabilitation Services, and the VE who testified at the hearing.

In determining that Plaintiff is not disabled, Judge Lombardo relied in great part on the fact that, in spite of her mental retardation, Plaintiff had maintained employment in the past. However, the evidence reveals two things about that employment. First, as noted by the counselor with the State of Ohio Rehabilitation Services, Plaintiff's employment was "carved" for her; that is, some of the tasks were performed by others. *See,* Tr.165-66. Judge Lombardo rejected that opinion essentially on the basis that it was inconsistent with Plaintiff's testimony that she obtained the job at Bob Evans by herself. (Tr. 25). However, even assuming that Plaintiff did, in fact, obtain the job by herself, that does not indicate that the job was not carved for her.

Judge Lombardo apparently rejected the conclusions from the vocational counselor who performed an extensive evaluation at ProWork on the basis that it contained testimony done on referral from the counselor at Ohio Rehabilitation Services. *Id.* As noted above, however, the reason for which Judge Lombardo rejected the conclusions from the Ohio Rehabilitation Services counselor do not support a conclusion that Plaintiff's job was not carved for her. It seems, then, that the basis on which Judge Lombardo rejected the ProWork conclusions is invalid. Nevertheless,

9

although the ProWork counselor determined that Plaintiff was capable of performing work similar to her previous employment with some initial support, he also determined that Plaintiff should not be expected to work without supports. (Tr. 157).

Finally, the VE's testimony makes it clear that Plaintiff has essentially been functioning in a sheltered work environment in that her mother functioned as a job coach for her. Although Plaintiff worked for some twenty years at a job, she was able to do so because, in essence, she had a job coach which the VE essentially testified is the equivalent of a sheltered work environment.[1] Additionally, the VE testified that none of the jobs which she identified would require an individual to function independently and did not involve close supervision or having a co-worker with the individual. In the absence of a job coach or a supervisor or co-worker who would provide Plaintiff with coaching, Plaintiff is not able to perform work in the competitive work environment.

There is little, if any, evidence which opposes the evidence from the vocational counselors and VE and therefore the Commissioner erred by rejecting that evidence. Accordingly, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the

---

[1] Similarly, while the evidence shows that Plaintiff has been living in a house by herself since her mother was admitted to a nursing home, her sister's and sister-in-law's testimony makes it clear that Plaintiff is not living independently. Plaintiff's family maintain close contact with Plaintiff, checks on her well-bing frequently, and they essentially perform tasks for Plaintiff which she is not capable of performing independently. *See,* Tr. 467-90.

decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, the vocational evidence establishes that Plaintiff is able function in a sheltered work environment and is not able to perform work in the competitive work environment and there is very little, if any, evidence which opposes that vocational evidence.

It is accordingly recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

March 19, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it

as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).